UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

| | |
|---|---|
| **RICHARD SCHALES** | **CASE NO. 6:17-CV-01512** |
| **VERSUS** | **JUDGE ROBERT R. SUMMERHAYS** |
| **NATIONSTAR MORTGAGE LLC, ET AL.** | **MAGISTRATE JUDGE WHITEHURST** |

### MEMORANDUM RULING

Before the Court is a Motion for Summary Judgment [Doc. No. 111] filed by Defendant Bank of America, N.A. ("BANA"). Plaintiff has filed an Opposition [Doc. No. 117], to which BANA filed a reply. [Doc. No. 119] For the reasons that follow, the motion is GRANTED. Plaintiff's request for additional discovery and leave to amend his Complaint is DENIED.

## I.
### BACKGROUND

This case involves a dispute between plaintiff Richard Schales and the companies that serviced his home mortgage. Schales executed a $70,000.00 promissory note in favor of New South Federal Savings Bank ("New South") on March 20, 2003. [Doc. No. 111-3] The note is secured by a mortgage encumbering Schales' residence at 2112 Kramer Drive, New Iberia, Louisiana (the "Mortgage"). [Doc. No. 111-4] Schales' Mortgage was serviced by Countrywide Home Loans ("Countrywide") and defendant BANA as the successor to Countrywide from 2003 to 2013.[1] [Docs. No. 111-2, 111-5]

The present dispute arose when BANA "force placed" insurance on Schales' residence after Schales' personal insurance policy lapsed on March 31, 2005, and neither Schales nor his insurance agent provided BANA with proof of a renewal or a new policy. [Doc. No. 111-2 at 4]

---

[1] Countrywide and BANA will be referred to collectively as "BANA."

BANA charged the $419 premium for the force-placed insurance to Schales' escrow account. [*Id.*] BANA then received proof of continuous insurance coverage from Schales' insurance agent in May 2005. [*Id.*] This proof of coverage showed that Schales had obtained a new insurance policy with Aegis Security Insurance Company ("Aegis") with coverage from March 31, 2005 through March 31, 2006. [*Id.*] After receiving this proof of coverage, BANA cancelled the force-placed insurance policy and credited Schales' escrow account for the $419 previously charged. [Doc. No. 111-2 at 4] Schales' Aegis policy then lapsed on March 31, 2006, and Schales did not provide proof of new or continuing coverage to BANA. [*Id.*] Accordingly, BANA once again force placed insurance coverage on Schales' residence from March 31, 2006, and charged Schales' escrow account the $415 premium for the force-placed insurance policy. [*Id.* at 5]

BANA's uncontradicted summary judgment evidence shows that, from March 31, 2006 through April 1, 2013, neither Schales nor his insurance agent provided BANA with proof that Schales had obtained his own insurance coverage. [Doc. No. 111-2 at 10; *see, e.g.,* Doc. No. 111-20 at 48-49] Accordingly, BANA continued to force place insurance on Schales' residence through March 31, 2013. During this time period, BANA sent Schales written notices annually regarding the need for and status of insurance on the property. These notices stated that BANA would continue to purchase force-placed insurance and charge Schales' escrow account if he did not purchase coverage himself, and that force-placed policies would likely be more expensive and provide less coverage than a policy that Schales obtained on his own. [Docs. No. 111-6 through 111-19] The notices also recommended that Schales purchase his own policies to avoid the high cost and lower coverage of a force-placed insurance policy, and explained how Schales could provide proof of insurance to BANA. [*Id.*] On April 1, 2013, BANA transferred the servicing rights for Schales' Mortgage to defendant Nationstar Mortgage LLC ("Nationstar") and cancelled

the remaining coverage on the force-placed insurance policy. [Doc. No. 111-2 at 9] Like BANA, Nationstar appears to have purchased force-placed insurance on Schales' residence beginning in 2013. [Doc. No. 22 at ¶ 10]

On August 13, 2014, Nationstar filed a verified petition for executory process in state court alleging that Schales had defaulted on his obligations under the note and Mortgage. *Nationstar Mortg., LLC v. Schales*, 2018-439 (La. App. 3 Cir. 12/12/18), 261 So. 3d 912, 915. On August 19, 2014, the state trial court found that Nationstar was entitled to a writ of seizure and sale; accordingly, the Iberia Parish Clerk of Court issued the writ and the sheriff recorded a notice of seizure. *Id.* Schales then filed a petition in the state court proceedings for injunctive relief to prohibit the seizure and sale of the property on December 18, 2014.[2] *Id.* Schales also filed a reconventional demand seeking damages for wrongful foreclosure, negligence, violations of Schales' "Constitutional Due Process Rights," conversion, breach of fiduciary duty, violations of the Louisiana Unfair Trade Practices Act, and violations of the federal Fair Debt Collection Practices Act. *Id*. Nationstar responded by filing a motion to strike Schales' reconventional demand and filing dilatory exceptions asserting unauthorized use of summary procedure, improper cumulation of actions, and improper use of executory process, as well as peremptory exceptions of no cause of action and prescription. *Id.* The trial court granted all of Nationstar's exceptions and dismissed Schales' claims with prejudice. *Id.* On December 12, 2018, the Third Circuit reversed in part, finding that "the trial court erred in dismissing Schales' claims rather than ordering that the improperly cumulated claims be severed and assigned a new docket number or ordering that Schales amend his pleadings to conform to proper procedure." *Id.* at 921. On December 19, 2018,

---

[2] On November 28, 2016, at the request of Nationstar, the state court issued an order cancelling the seizure notice because the property described in the seizure notice was not the same property encumbered by the mortgage. *Nationstar*, 261 So.3d at 915. Nationstar has asserted that Schales' property has not been seized to date and is not currently subject to sale. [Doc. No. 63 at 4]

the trial court issued an order severing Schales' reconventional demand from the suit for executory process. [Doc. No. 63-2]

Meanwhile, on October 13, 2017 (after the state trial court issued its ruling dismissing Schales' claims, but before the Third Circuit issued its decision on appeal), Schales filed a new suit in state court, largely mirroring his prior reconventional demand. [Doc. No. 1-1] In this suit, Schales named both Nationstar and BANA as defendants. Schales acknowledges that he filed this suit "to stop prescription in the event the appellate court denied the appeal." [Doc. No. 53-1 at 1] BANA removed the suit to this Court on November 17, 2017. Schales then filed an Amended Complaint (the Complaint") asserting claims for breach of contract, contractual fraud, conversion, negligent misrepresentation/delictual fraud, breach of fiduciary duty, violations of the Truth in Lending Act, 15 U.S.C. § 1601, *et seq.*, and violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et seq.* against Nationstar and BANA. [Doc. No. 22]

Schales agreed to settle his claims against Nationstar and, on May 27, 2020, the Court granted the Joint Voluntary Motion to Dismiss and dismissed the claims against Nationstar. [Doc. No. 123] BANA filed the present Motion for Summary Judgment on April 13, 2020. [Doc. No. 111] Schales opposes the motion but seeks leave to amend his Complaint and conduct additional discovery. [Doc. No. 117 at 5-6] The discovery deadline in this case expired on February 24, 2020. [Doc. No. 78] The case was set for a bench trial on August 3, 2020, but the trial setting has been continued. [Doc. No. 127]

## II.
### LEGAL STANDARD

"A party may move for summary judgment, identifying each claim or defense–or the part of each claim or defense–on which summary judgment is sought." Fed. R. Civ. P. 56(a). "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Id.* "A genuine issue of material fact exists when the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Quality Infusion Care, Inc. v. Health Care Service Corp.*, 628 F.3d 725, 728 (5th Cir. 2010). As summarized by the Fifth Circuit:

> When seeking summary judgment, the movant bears the initial responsibility of demonstrating the absence of an issue of material fact with respect to those issues on which the movant bears the burden of proof at trial. However, where the nonmovant bears the burden of proof at trial, the movant may merely point to an absence of evidence, thus shifting to the non-movant the burden of demonstrating by competent summary judgment proof that there is an issue of material fact warranting trial.

*Lindsey v. Sears Roebuck and Co.,* 16 F.3d 616, 618 (5th Cir.1994) (internal citations omitted).

When reviewing evidence in connection with a motion for summary judgment, "the court must disregard all evidence favorable to the moving party that the jury is not required to believe, and should give credence to the evidence favoring the nonmoving party as well as that evidence supporting the moving party that is uncontradicted and unimpeached." *Roberts v. Cardinal Servs.*, 266 F.3d 368, 373 (5th Cir.2001); *see also Feist v. Louisiana, Dept. of Justice, Office of the Atty. Gen.*, 730 F.3d 450, 452 (5th Cir. 2013) (court must view all facts and evidence in the light most favorable to the non-moving party). "Credibility determinations are not part of the summary judgment analysis." *Quorum Health Resources, L.L.C. v. Maverick County Hosp. Dist.*, 308 F.3d 451, 458 (5th Cir. 2002). Rule 56 "mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that

party's case, and on which that party will bear the burden of proof." *Patrick v. Ridge*, 394 F.3d 311, 315 (5th Cir. 2004) (alterations in original) (quoting *Celotex v. Catrett*, 477 U.S. 317, 322 (1986)).

## III.
### ANALYSIS

### A. Abandoned Claims

As a preliminary matter, Schales has withdrawn most of his claims in response to BANA's Motion for Summary Judgment. Specifically, he withdraws his claims for conversion, negligent misrepresentation/delictual fraud, breach of fiduciary duty, violations of the Truth in Lending Act, and violations of the Fair Debt Collection Practices Act. [Doc. No. 117 at 1-2] He also withdraws his damages claims based on emotional distress and mental anguish. [*Id.*] With respect to these claims, BANA's Motion for Summary Judgment is GRANTED and these claims are DISMISSED WITH PREJUDICE. Schales' sole remaining claims are for breach of contract and contractual fraud.

### B. Breach of Contract Claim

Schales appears to assert two grounds for his breach of contract claim against BANA. First, he alleges that BANA breached the mortgage contract by preventing him from purchasing his own insurance to replace the force-placed insurance obtained by BANA. [Doc. No. 117 at 3] Second, Schales alleges that BANA refused to assist him in obtaining his own insurance and providing proof of insurance. [*Id.*] Specifically, Schales argues that BANA purchased force-placed insurance with "excessive" and "unnecessarily expensive" premiums before he could purchase his own insurance for the property, and that the charges for these premiums forced Schales to default on the Mortgage. [*Id.*] Schales asserts that BANA subsequently refused to accept proof of insurance

that Schales purchased on his own or refused to assist Schales with providing proof of his own insurance so that the force-placed insurance could be avoided altogether. [*Id.*] Schales contends that BANA was obligated to assist him with respect to force-placed insurance, and that BANA refused to assist him when he reached out to BANA. [*Id.* at 5]

### 1. Refusal to Accept Proof of Insurance

BANA contends that it did not violate the terms of the mortgage and did not reject proof of any insurance policy purchased by Schales.3 [Doc. No. 111-1 at 28] Under Louisiana law, the rights, duties, and obligations between a mortgagor and mortgagee are defined by the mortgage agreement, which serves as the law between the parties. *Burks v. Prudential Ins. Co. of N. Am.*, No. CIV.A.06-4173, 2009 WL 2366105, at *2 (E.D. La. July 28, 2009), *aff'd*, 388 F. App'x 387 (5th Cir. 2010) (citing *Hayes v. Well Fargo Home Mortgage*, 2006 WL 393743, *3 (E.D. La. Oc.t 31, 2006)). "Interpretation of a contract is the determination of the common intent of the parties." La. Civ. Code Ann. art. 2045. If the terms of a contract are clear and unambiguous, "no further interpretation may be made in search of the parties' intent." La. Civ. Code Ann. art. 2046. To state a valid claim for breach of a contract under Louisiana law, a plaintiff must allege a breach of a specific contractual provision. *Whitney Bank v. SMI Companies Glob., Inc*., 949 F.3d 196, 205 (5th Cir. 2020) (citing *Louque v. Allstate Ins. Co*., 314 F.3d 776, 782 (5th Cir. 2002); *Gulf Prod. Co. v. Petroleum Engineers, Inc*., 2013-0578 (La. App. 4 Cir. 12/11/13), 2013 WL 6925002 at *2).

---

3 BANA also seeks dismissal of the breach of contract claim on the grounds that the charging of premiums to an escrow account after Schales failed to purchase insurance complied with the terms of the mortgage and escrow rider, that claims based on the amount of insurance premiums are barred by the filed rate doctrine, and that any claim for breach based on conduct prior to 2007 is prescribed. [Doc. No. 111-1 at 27-36] However, because Schales' opposition limits his argument to BANA's refusal to accept proof of insurance or assist him to provide such proof [Doc. No. 117 at 2-3], the Court will address only BANA's arguments as to that issue.

Here, Covenant 5 of the Mortgage expressly granted BANA the right to force place insurance on Schales' property if he failed to obtain his own insurance coverage:

> If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. . . . Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument.

[Doc. No. 111-4 at 6] Schales' mortgage also included an escrow rider (the "Escrow Rider") that required him to insure the property covered by the Mortgage, pay the insurance premiums for this coverage directly to his insurer, and deliver proof of coverage to BANA at least thirty (30) days prior to the renewal date of the previous year's policy. [Doc. No. 111-4 at 16] Schales' Opposition does not dispute that he failed to obtain his own insurance coverage from April 2006 through April 1, 2013, when the servicing rights to his Mortgage loan were transferred to Nationstar. Nor does he dispute that Covenant 5 of the Mortgage gives BANA the right to force place insurance if Schales fails to maintain his own insurance coverage. Yet, Scales asserts that he "did not agree to the forced placed insurance policy that Bank of America purchased," and asserts that the premium charged was excessive. [Doc. No. 117-1]

Schales identifies no provision of the Mortgage that BANA violated by force placing insurance when Schales failed to provide proof of coverage. Covenant 5 imposes no obligation on BANA to obtain Schales' agreement to a force-placed policy. As far as Schales' claim that the cost of the force-placed policy was "excessive," Covenant 5 of the Mortgage expressly states that Schales "acknowledges that the cost of the insurance so obtained might *significantly exceed* the cost of insurance that [Schales] could have obtained." [Doc. No. 111-4 at 6] (emphasis added). Nor does Schales point to any provision in the Mortgage limiting the cost of force-placed insurance

obtained by BANA. Accordingly, this aspect of Schales' breach of contract claim cannot survive summary judgment. *See Barbe v. Ocwen Loan Servicing, LLC*, 383 F. Supp. 3d 634, 643–45 (E.D. La. 2019) (plaintiff failed to state a breach of contract claim against mortgage servicer for obtaining force-placed insurance because plaintiff's allegations did not identify any contractual promise that the servicer breached).

Schales, however, suggests that BANA breached the Mortgage not when BANA force placed insurance on Schales' property, but when it declined to accept proof of insurance or refused to communicate with Schales regarding proof of insurance.[4] [Doc. No. 117 at 3] This argument similarly fails to point to any contractual provision in the Mortgage that BANA breached. As noted above, the Escrow Rider and Covenant 5 of the Mortgage allowed BANA to purchase insurance and charge Schales through an escrow account if Schales failed to maintain insurance on the property. [Doc. No. 111-4 at 16] Schales does not dispute this provision, nor does he dispute BANA's summary judgment evidence that BANA sent annual notices to him regarding force-placed insurance. There is no evidence in the summary judgment record that Schales attempted to obtain his own insurance coverage from April 2006 through April 2013, the time period that BANA serviced the Mortgage. Nor is there any evidence that Schales attempted to provide proof of coverage during this time period and that BANA refused to accept that proof. While Schales asserts he "was not allowed" to purchase his own policies before BANA force placed insurance, he does not dispute that he never provided Countrywide or BANA with proof of insurance

---

[4] Schales also points to certain allegations in the Amended Complaint as the operative facts showing breach of contract. [Doc. No. 117 at 4] However, the identified section of the Amended Complaint states only that Schales purchased insurance from 2003-2006, that he was charged for force-placed insurance thereafter, and that the lender refused to accept proof of insurance in May 2013, which was after BANA stopped servicing the mortgage. [Doc. No. 22 at ¶¶ 5-10] As noted elsewhere, the allegations regarding who paid for insurance during each of the years between 2003 and 2013 appear undisputed, and do not on their own allege any violation of the Mortgage. These allegations do not support the limited argument made in the Opposition.

coverage within the thirty-day window imposed by the Mortgage. [Doc. No. 117 at 3] Schales states that he obtained his own insurance in May 2013 and that BANA did not accept proof of that coverage. However, BANA was no longer servicing Schales' loan in May 2013. Any proof of coverage would have gone to Nationstar. In sum, Schales has not pointed to anything in the summary judgment record supporting his allegation that BANA refused to accept proof of insurance, or that BANA's conduct pertaining to force-placed insurance breached the Mortgage.

### 2. Refusal to Provide Assistance

Schales further alleges that BANA violated the terms of the Mortgage by refusing to help him obtain his own insurance, provide proof of that coverage, and avoid the costly force-placed insurance premiums that were charged to his escrow account. [Doc. No. 117 at 3] Specifically, Schales alleges that the notices he received regarding the purchase of force-placed insurance stated that he could "seek assistance for the force-placed premiums that Mr. Schales disagreed with."[5] [Doc. No. 117 at 5] Schales alleges that when he contacted BANA for assistance he was told that his account was in foreclosure and therefore no assistance would be rendered. [*Id.*]

Again, Schales does not identify a specific contractual provision that BANA breached. Neither Covenant 5 of the Mortgage nor the Escrow Rider pertaining to insurance and proof of insurance require BANA to affirmatively assist Schales in obtaining his own insurance or in providing proof of insurance. [Doc. No. 111-4] Moreover, nothing in BANA's annual notices regarding the insurance requirement imposes a contractual obligation on BANA to assist Schales

---

[5] As a threshold matter, it is not clear from the record that the notices invite contact if the borrower wishes to dispute the purchase of force-placed insurance; they do, however, state that the lender intends to purchase its own insurance policies if no action is taken by a deadline, urge the borrower to purchase his own policies, and give instructions on how to provide proof of insurance. [Docs. No. 111-6 through 111-19]

in obtaining his own insurance coverage.6 [Docs. No. 111-6 through 111-19] Consequently, the record does not support a claim that BANA breached the Mortgage by refusing to accept proof of insurance or refusing to assist Schales with lodging a dispute regarding the force-placed insurance. In sum, Schales does not establish that there is a genuine issue of material fact concerning a breach of the terms of the Mortgage, and BANA's motion is therefore GRANTED as to that claim.

### C. Contractual Fraud Claim

BANA also seeks dismissal of Schales' contractual fraud claim, arguing that it made no misrepresentations to Schales about the terms of the Mortgage -- nor could it have because it did not originate the mortgage.7 [Doc. No. 111-1 at 37-39] Schales counters that BANA committed contractual fraud by ignoring Schales' attempts to obtain his own insurance policy and by telling him that his account was in foreclosure when he contacted BANA to dispute the purchase of force-placed insurance. [Doc. No. 117 at 4-5] In the Amended Complaint, Schales alleges that BANA, along with Nationstar, "misrepresented or omitted accurate information about the escrow account which vitiated Mr. Schales' consent to the Mortgage and [Escrow] Rider." [Doc. No. 22 at ¶ 33]

Under Louisiana law, consent to a contract may be vitiated by error, fraud, or duress. La. Civ. Code. Ann art. 1948. "An action for fraud against a party to a contract requires: (1) a misrepresentation, suppression, or omission of true information; (2) the intent to obtain an unjust advantage or to cause damage or inconvenience to another; and (3) that the error induced by the fraudulent act relates to a circumstance that substantially influenced the victim's consent to the contract. Fraud need only be proved by a preponderance of the evidence and may be established

---

6 The Court also notes that, while the annual notices do not impose a contractual obligation on BANA to assist Schales in providing proof of insurance, the notices contain instructions on providing proof of insurance.

7 As noted above, Schales' delictual fraud claim is dismissed, so his sole remaining fraud claim is contractual fraud, for which he seeks economic damages and rescission of the Mortgage and Escrow Rider. [Doc. No. 22 at 6; Doc. No. 117 at 1-2]

by circumstantial evidence." *Petrohawk Properties, L.P. v. Chesapeake Louisiana, L.P.*, 689 F.3d 380, 388 (5th Cir. 2012) (internal quotations and citations omitted); *see also Shelton v. Standard/700 Assocs.*, 798 So. 2d 60, 64–66 (La. 2001). Fraud does not vitiate consent if the party against whom the fraud was directed could have ascertained the truth without difficulty, inconvenience, or special skill. La. Civ. Code Ann. art. 1953. Federal Rule of Civil Procedure 9(b) requires a plaintiff seeking rescission based on fraud to state with particularity the circumstances constituting fraud and must allege specific facts that support an inference of fraud, including identifying the speaker, time, and location of allegedly fraudulent statements, as well as why the statements are fraudulent. *Flaherty & Crumrine Preferred Income Fund, Inc. v. TXU Corp.*, 565 F.3d 200, 207 (5th Cir. 2009).

    Here, Schales alleges that BANA either omitted material information or actively misrepresented the Mortgage terms relating to the escrow account when the Mortgage and associated documents were executed. [Doc. No. 22 at ¶ 33] These allegations fail to support a contractual fraud claim for at least three reasons. First, Covenant 5 of the Mortgage and the Escrow Rider explicitly lay out Schales' obligation to obtain insurance on the property covered by the Mortgage, and further detail BANA's right to obtain force-placed insurance if Schales failed to provide proof of insurance coverage. Schales, however, points to no specific misrepresentations (or omissions, for that matter) involving these provisions that occurred at the time the Mortgage was executed. Second, to the extent that Schales points to specific misrepresentations or information that BANA allegedly omitted, the allegations involve BANA's actions long after the Mortgage was executed. [Doc. No. 22 at 3-5] Accordingly, even assuming the truth of these allegations, they cannot amount to "fraud that would vitiate the plaintiffs' consent under La. C.C. art. 1953" because they were not made in connection with the execution of the Mortgage. *Kirkham*

*v. Am. Liberty Life Ins. Co.*, 717 So. 2d 1226, 1229 (La. App. 2 Cir. 8/19/98). Finally, Schales' attempt to assert a contractual fraud claim ignores the fact that New South, not BANA, originated Schales' Mortgage in 2003. [Docs. No. 111-3-4] Countrywide, and later BANA, serviced the Mortgage after it was executed. [Doc. No. 22 at ¶ 4] Schales does not allege that Countrywide or BANA were involved in the negotiation or execution of the Mortgage, or that they made any statements to him regarding the Mortgage terms prior to execution. In sum, Schales cannot point to anything in the summary judgment record showing that BANA made a material misrepresentation or omitted a material fact regarding the Mortgage terms that would vitiate Scales' consent to the Mortgage. Accordingly, BANA is entitled to summary judgment on Schales' contractual fraud claim, and the motion is GRANTED as to that claim.

### D. Leave to Amend Complaint and For Additional Discovery

Schales alternatively requests leave to amend the Complaint and engage in additional discovery. [Doc. No. 117 at 5-6] Rule 15(a) of the Federal Rules of Civil Procedure provides that courts should "freely" grant leave to amend when "justice so requires." But this "generous standard is tempered by the necessary power of a district court to manage a case." *Priester v. J. P. Morgan Chase Bank, N.A.*, 708 F.3d 667, 678 (5th Cir. 2013). The short answer here is that Schales' request to amend his Complaint to avoid dismissal is untimely. A court may deny a party's request for leave to amend on the grounds of "undue delay, bad faith or dilatory motive on the part of the movant, repeated failures to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party…, and futility of the amendment." *Brown v. Taylor*, 911 F.3d 235, 246 (5th Cir. 2018). This case was removed to this Court on November 11, 2017. [Doc. No. 1] Schales has been granted leave to amend his Complaint once already [Doc. No. 22], which did not cure the deficiencies in his claims. Schales' argument also ignores the procedural posture of this case.

BANA has filed a Rule 56 motion for summary judgment requiring Schales to come forward with competent summary judgment evidence demonstrating that there are genuine questions of material fact as to each element of his claims. As explained above, he has not met his burden. Schales also does not address why he should be entitled to additional discovery when the discovery deadline in this case lapsed in February 2020. [Doc. No. 78] In sum, allowing further amendments and discovery at this late stage would cause undue delay of the case and undue prejudice to BANA. Leave to amend the Complaint and conduct additional discovery is therefore DENIED.

## IV.
### CONCLUSION

For the reasons set forth above, the Motion for Summary Judgment [Doc. No. 111] filed by Defendant Bank of America, N.A. ("BANA") is **GRANTED**. All claims against BANA are **DISMISSED WITH PREJUDICE**. Leave to further amend the Complaint and conduct additional discovery is **DENIED**.

THUS DONE in Chambers on this 14th day of July, 2020.

**ROBERT R. SUMMERHAYS**
**UNITED STATES DISTRICT JUDGE**